*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* D. L. TOMLIN, Minor.

UNPUBLISHED
May 21, 2025
2:09 PM

No. 373536
St. Clair Circuit Court
Family Division
LC No. 23-000057-NA

Before: WALLACE, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor child, DLT, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that child will be harmed if returned to parent). We affirm.

## I. FACTUAL BACKGROUND

In January 2023, mother gave birth to DLT. DLT tested positive for several illegal drugs at birth and ultimately remained hospitalized for several weeks, during which time mother left the hospital. DLT was placed in the care of mother's ex-husband.[1] In March 2023, petitioner, the Department of Health and Human Services (DHHS), filed an initial petition for removal of DLT. The petition alleged that mother had a known history of drug use and admitted that she continued abusing drugs as of the day DLT was born. The petition further alleged that DLT tested positive for morphine, methadone, cocaine, and benzoylecgonine[2] when she was born and was hospitalized as a result of withdrawal symptoms. Additionally, the petition alleged that mother's housing was unstable and that mother was placed under a psychiatric petition after expressing plans to

---

[1] Mother's ex-husband is not DLT's legal or putative father, and does not participate in this appeal.

[2] Benzoylecgonine is a metabolite of cocaine. National Library of Medicine, *Benzoylecgonine* < https://pubchem.ncbi.nlm.nih.gov/compound/Benzoylecgonine> (accessed May 5, 2025).

-1-

intentionally overdose after giving birth. The petition likewise reported that mother expressed disinterest in bonding with DLT and indicated that it would be best for DLT to enter foster care. The trial court authorized the petition. Following a preliminary hearing, the court found statutory grounds to exercise jurisdiction over DLT. DLT was thereafter placed in the care of her legal father.[3]

A dispositional hearing was held in April 2023. A representative from DHHS recommended that mother be placed on a parent-agency treatment plan (PATP), and the court agreed. In May 2023, the court entered an order of disposition directing mother to comply with a PATP. Under the terms of the PATP, mother was required to obtain and maintain a legal source of income and independent, safe, suitable housing for at least three consecutive months; participate in supervised visitation; participate in and benefit from life skills and parenting classes; complete psychological and substance abuse assessments; and participate in outpatient counseling, if necessary.

For a brief period, mother successfully participated in voluntary and court-ordered services, and found employment and housing. However, mother eventually relapsed, stopped participating in services, and lost her job and housing. Petitioner filed a supplemental petition for termination of mother's parental rights in August 2024. A hearing on the petition was held in October 2024. The trial court heard testimony from mother, DLT's foster-care worker, and a Family Assistance Program (FAP) services worker. The trial court ultimately determined that statutory grounds existed to terminate mother's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), and that termination was in DLT's best interests. This appeal followed.

II. ANALYSIS

A. STATUTORY GROUNDS

Mother argues that the trial court erred by ruling that statutory grounds existed to terminate her parental rights to DLT. We disagree.

"We review for clear error the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020) (quotation marks and citation omitted).

---

[3] DLT's legal father was not named as a respondent in the court below and does not participate in this appeal.

Mother argues that termination was inappropriate under MCL 712A.19b(3)(c)(*i*) because the conditions of her substance abuse no longer existed. This argument is unpersuasive. Pursuant to MCL 712A.19b(3)(c)(*i*), termination is appropriate when:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

There is no dispute that more than 182 days elapsed since the court issued the initial dispositional order. The conditions that brought DLT into care included substance use, mental-health concerns, and housing instability.

At the termination hearing, DLT's foster-care worker testified that DLT came into care after testing positive for multiple drugs at birth in January 2023. Although the trial court entered its initial order of disposition in May 2023, mother did not start participating in services until Fall 2023. Mother initially made progress toward rectifying the conditions that brought DLT into DHHS's care, but she relapsed on crack cocaine between April and June 2024. Mother and the foster-care worker both testified that the relapse resulted in mother's failure to participate in parenting time with DLT and failure to remain in contact with caseworkers.

Regarding housing, the record indicates that mother got her own apartment in April 2024, but was forced to move out under threat of eviction within two months. At the time of the termination hearing, mother had not reestablished independent housing and did not have a specific plan to do so in the future. The FAP services worker testified that mother had not made much of an effort to obtain independent housing. Mother admitted that, when she briefly lived in her own apartment, she "got overwhelmed and it caused a relapse . . . ."

Regarding her employment status, mother testified that her boss found a crack pipe in her purse in May or June 2024. Mother explained that her boss initially fired her, but then stated that she could keep her job if she could provide a clean drug test. Mother testified that she had since resumed her employment. However, the foster-care worker testified that mother had not provided any documentation verifying her employment status.

Additionally, regarding mother's mental health and substance abuse issues, the record indicates that mother failed to complete court-ordered substance abuse and psychiatric evaluation. At the termination hearing, mother testified that she underwent a psychiatric evaluation after DLT was born, which her previous case worker said was sufficient. The former case worker also told mother that she "completed everything on the checklist to be done" in order to gain custody of DLT. However, mother testified that she got a new caseworker, who then told her that she needed to redo the psychiatric and substance abuse evaluation because there was no record of it. Mother relapsed shortly afterward, and the evaluation was never completed.

In general, despite receiving a considerable number of services aimed at addressing her substance abuse and mental health issues, mother relapsed about a year after the initial disposition, and failed to demonstrate that she benefited from the services in which she participated. The foster-care worker testified that mother likewise failed to progress beyond one hour of supervised visitation per week in the time that elapsed since DHHS filed the initial petition. The foster-care worker believed it would take a significant amount of time for mother to demonstrate her ability to remain substance-free, obtain independent housing, and provide permanency for DLT. The testimony thus indicated there was no reasonable likelihood that mother would be able to rectify the conditions that brought DLT into care within a reasonable time considering DLT's age. Accordingly, the trial court did not err by finding that statutory grounds existed to terminate mother's parental rights under MCL 712A.19b(3)(c)(*i*).[4]

## B. BEST INTERESTS

Mother also argues that the trial court erred by ruling that termination was in DLT's best interests. We disagree.

We review a trial court's best-interest determination for clear error. *In re White*, 303 Mich App at 713. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App at 80 (quotation marks and citation omitted).

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the children's best interests." *Id*. This Court focuses on the child—not the parent—when reviewing best interests. *In re Atchley*, 341 Mich App at 346. In making its determination,

> the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

---

[4] If at least one statutory ground for termination is established, "we need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009). We thus decline to address the remaining grounds for termination of mother's parental rights.

"[A] trial court must explicitly address whether termination is appropriate in light of the children's placement with relatives." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016) (quotation marks and citation omitted). "Placement with a relative weighs against termination, but that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests[.]" *Atchley*, 341 Mich App at 347 (quotation marks and citation omitted).

The trial court correctly concluded that termination was in DLT's best interest. DHHS presented evidence that mother's parenting ability was poor when living outside of a structured environment. Mother's interactions with DLT were positive during their supervised visitation before mother relapsed, but mother stopped participating in visitation with DLT for several months as a result of her relapse. There was some evidence of a bond between mother and DLT, but the record indicates that mother was only able to appropriately parent DLT in a time-limited, supervised setting. Mother's involvement in DLT's life became nonexistent during periods of relapse, suggesting that she would not be able to provide stability for DLT in the long term.

However, the bond between mother and DLT is only one factor to be considered by the trial court. *In re Olive/Metts*, 297 Mich App at 41-42. As has been discussed, mother failed participate in, and benefit from, her PATP. According to DLT's foster-care worker, DLT needed "permanent stability and finality" at her age, which mother would not be able to provide in a reasonable time. The record bears this out. Mother's substance use issues and eventual relapse caused her to lose her housing and employment. It also led to mother's failure to participate in all of the services ordered by the court in her PATP, including a psychiatric and substance abuse evaluation, and to regularly attend parenting time.

By contrast, the record indicated that DLT had a stable and healthy home environment with her legal father, who was capable of meeting her needs. The record indicates that DLT was placed in her legal father's care not long after the initial petition was filed. DLT's legal father cared for her medical needs, which included several hospitalizations during her first year of life, as well as routine doctor's appointments and other services. The foster-care worker testified that DLT's health issues had improved while in her legal father's care. Throughout the course of the lower court proceedings, a previous case worker and DLT's lawyer-guardian ad litem advised the trial court that DLT was doing well in her legal father's care and that he met DLT's needs. The trial court considered DLT's placement with her legal father and ultimately determined that DLT's placement with a relative did not outweigh the "significant issues" mother had to overcome "in order to be a safe and stable parent for [DLT]."

Considering the foregoing, a preponderance of the evidence established that termination of mother's parental rights was in DLT's best interest. The trial court thus did not clearly err by terminating mother's parental rights.

Affirmed.

/s/ Randy J. Wallace
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett